IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

LOREEN PALLAS,                          )
                                        )
              Plaintiff,                )
                                        )
       vs.                              )
                                        )
UNITED STATES OF AMERICA,               )
                                        )
              Defendant.                )
_____)
                                        )
LOREEN PALLAS,                          )
                                        )
              Plaintiff,                )
                                        )
       vs.                              )
                                        )   No. 3:12-cv-0122-HRH
CORDOVA COMMUNITY MEDICAL               )     (Consolidated with
CENTER owned and operated by THE CITY   )   No. 3:13-cv-0185-HRH)
OF CORDOVA,                             )
                                        )
              Defendant/Third-Party Plaintiff, )
                                        )   O R D E R
       vs.                              )
                                        )   Motion for Summary Judgment
UNITED STATES OF AMERICA,               )
                                        )
              Third-Party Defendant.    )
_____)

        Cordova Community Medical Center and the City of Cordova move for summary

judgment on plaintiff's claims.[1]  This motion is opposed.[2]  Oral argument was requested

and has been heard.

_____

        [1]Docket No. 23.

        [2]Docket No. 30.

-1-

<u>Facts</u>

Plaintiff is Loreen Pallas. Defendants are the United States of America and the Cordova Community Medical Center (CCMC), owned and operated by the City of Cordova.

CCMC is a community hospital owned by the City of Cordova and operated by a seven-member board which is appointed by the City. CCMC is housed in the same building as Ilanka Community Health Center, which is a primary care health clinic owned and operated by the Native Village of Eyak. Ilanka is open Monday through Friday, while CCMC is always open.

In October 2009, Dr. Phillip Hess was employed by Ilanka as its medical director and Joan Phillips was employed by Ilanka as a registered nurse. Although Hess and Phillips sometimes worked for CCMC on the weekends and weeknights, plaintiff has admitted that neither Hess nor Phillips worked for CCMC during the month of October in 2009.[3]

In the fall of 2009, there was a task force established in Cordova to deal with the H1N1 flu pandemic. The task force consisted of representatives from the city, CCMC,

---

[3]Plaintiff's Responses to Cordova Community Medical Center's Requests for Admissions Nos. 5, 6, 7, & 8, Exhibit F at 4-5, Memorandum in Support of Cordova Community Medical Center and the City of Cordova's Motion for Summary Judgment, Docket No. 24.

Ilanka, and the school.[4]  The task force established a recorded hotline for people to call, which advised people who were experiencing flu-like symptoms to call the clinic or the hospital before going to the clinic or hospital.[5]  The recording also advised people to get immediate medical care if the sick person was having difficulty breathing or having chest pains, had signs of dehydration, or was less responsive than normal.[6]  The recording directed people to the CDC website for further information.[7]  The recording also advised people to call the hospital if the sick person had any of the serious symptoms discussed above or if they could not figure out what the best course of action was, but reiterated the admonition that "[i]f you can care for your sick person at home, ... that's RIGHT where you should stay."[8]

Dr. Hess testified that the hospital "wanted to limit the exposure of patients in the hospital, who were long-term care, chronically ill, to outside people coming through with the flu, and that we had advised people in the community to not just walk into the clinic

---

[4]Deposition at Philip Hess, M.D., at 6:21-7:3, Exhibit C, Memorandum in Support of Cordova Community Medical Center and the City of Cordova's Motion for Summary Judgment, Docket No. 24.

[5]Transcript of Hotline Recording, Exhibit H-2 at 1,  Memorandum in Support of Cordova Community Medical Center and the City of Cordova's Motion for Summary Judgment, Docket No. 24.

[6]Id.

[7]Id.

[8]Id.

and walk into the hospital."[9]  Dr. Hess testified that if someone called the clinic, the

protocol was to

> make an assessment of symptoms, looking for warning signs
> that — that would not represent a typical influenza illness.
> And if they were present, we would want to see a person, of
> course.  But if they weren't in my assessment, then, according
> to the community-wide plan, we would have recommended
> self-care at home.[10]

Signs were also posted at Ilanka and CCMC in order to insulate hospital patients

from being exposed to the H1N1 virus.  CCMC contends that it had a sign posted that read

"If you have any flu symptoms, <u>DO</u> <u>NOT</u> <u>ENTER</u> the building!  Go home and call 424-8888

[the hotline number.]"[11]  Plaintiff contends that CCMC had a "STOP" sign posted, below

which it said, "do not enter."[12]  But, plaintiff has produced a copy of the sign she contends

---

[9]Hess Deposition at 8:3-9, Exhibit C, Memorandum in Support of Cordova
Community Medical Center and the City of Cordova's Motion for Summary Judgment,
Docket No. 24.

[10]Id. at 10:16-24.

[11]Exhibit H-1, Memorandum in Support of Cordova Community Medical Center and
the City of Cordova's Motion for Summary Judgment, Docket No. 24.

[12]Deposition of Loreen Pallas at 74:3-10, Exhibit A, Memorandum in Support of
Cordova Community Medical Center and City of Cordova's Motion for Summary
Judgment, Docket No. 24.

was posted, which shows a "STOP" sign posted above a sign that reads: "If you have any flu symptoms, <u>DO</u> <u>NOT</u> <u>ENTER</u> the building!  Go home and call 424-8888."[13]

During the fall of 2009, persons presenting to the CCMC ER with flu-like symptoms

> were ... screened in the ambulance bay....  If suspected of having H1N1 they were swabbed, and if they had the virus and their symptoms warranted, [they] could be admitted to the ER.  The ambulance bay screening procedure was put in place as a way of controlling the spread of the virus.[14]

Plaintiff, who lives in Cordova, began feeling ill on Friday, October 9, 2009.  By Saturday, October 10, 2009, plaintiff was exhibiting flu-like symptoms (dizziness, headache, fever, and no appetite) and by Sunday, October 11, 2009, plaintiff felt worse and could not get out of bed.  In her discovery responses, plaintiff stated that her daughter, Nicole Nothstine, called CCMC on Sunday, October 11, 2009, and talked to Phillips, "a nurse at Ilanka.  She advised I take Tylenol."[15]  Plaintiff testified at her deposition that she and her daughter discussed whether her daughter should call the hospital, but that she was not

---

[13]Exhibit I, Memorandum in Support of Cordova Community Medical Center and City of Cordova's Motion for Summary Judgment, Docket No. 24.

[14]Responses to Plaintiff's First Set of Interrogatories to the Cordova Community Medical Center owned and operated by The City of Cordova at 2, Exhibit G, Memorandum in Support of Cordova Community Medical Center and the City of Cordova's Motion for Summary Judgment, Docket No. 24.

[15]Plaintiff's Response to Cordova Community Medical Center's First Discovery Requests at 2, Exhibit F, Memorandum in Support of Cordova Community Medical Center and City of Cordova's Motion for Summary Judgment, Docket No. 24.

present when her daughter allegedly made the phone call and that she did not hear the alleged conversation between Nothstine and Phillips.[16]  Plaintiff testified that Nothstine reported that Phillips advised that plaintiff should "take Tylenol, rest, drink plenty of liquids" and that she "should be better the next day."[17]

Nothstine testified that the first time she called anyone about her mother's illness was on Tuesday, October 13, 2009 and that she called Ilanka, not CCMC.[18]  Nothstine testified that when her parents first asked her how many times she had called about her mother's illness, she thought she had called more than once, but after thinking through the events that took place, she remembers only calling once on her mother's behalf.[19]  However, Nothstine testified that her father told her that he "had been calling all week, starting Sunday, and I assumed he had called CCMC because Ilanka is closed on the weekend."[20]

---

[16]Pallas Deposition at 89:8-23; 94:3-11, Exhibit A, Memorandum in Support of Cordova Community Medical Center and City of Cordova's Motion for Summary Judgment, Docket No. 24.

[17]Id. at 95:21-23.

[18]Deposition of Nicole Nothstine at 10:17-23 & 17:11-24, Exhibit B, Memorandum in Support of Cordova Community Medical Center and City of Cordova's Motion for Summary Judgment, Docket No. 24.

[19]Id. at 39:1-9.

[20]Id. at 17:14-17.  Plaintiff's husband and Nothstine's father, Noel Pallas, passed away recently and is not available as a witness.

In her discovery responses, plaintiff stated that on Monday, October 12, 2009, her husband called Ilanka and spoke with Hess who said "not to come in but to keep giving Tylenol."[21] However, during her deposition, plaintiff testified that when her husband called Ilanka on Monday, she heard him on the phone but that she did not know to whom he was speaking but assumed he was speaking to the on-duty nurse.[22] Plaintiff testified that her husband told "the people at ... Ilanka – that he was coming in with me" if she did not get better, but "they said no."[23] Plaintiff testified that her husband also talked to Hess in person at Ilanka on Monday.[24] She testified that Hess told her husband that she should "[t]ake Tylenol, bedrest, drink liquids" and that she would "probably get better."[25] Hess testified that he did not recall speaking with Mr. Pallas about his wife's illness.[26]

---

[21]Plaintiff's Response to Cordova Community Medical Center's First Discovery Requests at 2, Exhibit F, Memorandum in Support of Cordova Community Medical Center and City of Cordova's Motion for Summary Judgment, Docket No. 24.

[22]Pallas Deposition at 96:7-11, attached to Opposition to Cordova Community Medical Center and the City of Cordova's Motion for Summary Judgment, Docket No. 30.

[23]Id. at 103:2-5.

[24]Id. at 98:3-15.

[25]Id. at 98:18-20.

[26]Hess Deposition at 23:20-23, Exhibit C, Memorandum in Support of Cordova Community Medical Center and City of Cordova's Motion for Summary Judgment, Docket No. 24.

On Tuesday, October 13, 2009, plaintiff contends that her daughter talked with Phillips by phone, who advised that "plaintiff probably had H1N1 and should be feeling better in four to five days and to keep giving her Tylenol."[27]  Nothstine testified that she did call Ilanka on October 13 and speak with Phillips.[28] Nothstine testified that Phillips told her that it sounded like plaintiff had the flu "and it's best to give her fluids, keep giving her fluids, and rest and Tylenol, and it's best for her to stay home and not to bring her in."[29] Phillips testified that she remembered talking with Nothstine once about her mother and she could not recall if there had been other calls.[30]  Phillips testified that she told Nothstine that "if her mother thought she had the flu, she should stay home, drink fluids, rest, good handwashing, take Tylenol, and I might have said that ... we could expect that it would

---

[27]Plaintiff's Response to Cordova Community Medical Center's First Discovery Requests at 2, Exhibit F, Memorandum in Support of Cordova Community Medical Center and City of Cordova's Motion for Summary Judgment, Docket No. 24.

[28]Nothstine Deposition at 18:9-11, Exhibit B, Memorandum in Support of Cordova Community Medical Center and City of Cordova's Motion for Summary Judgment, Docket No. 24.

[29]Id. at 13:14-17.

[30]Deposition of Joan Phillips at 20:10-13, Exhibit D, Memorandum in Support of Cordova Community Medical Center and City of Cordova's Motion for Summary Judgment, Docket No. 24.

take a week to resolve flu-like symptoms."[31] Phillips testified that she did not tell Nothstine not to bring her mother into CCMC.[32]

On October 14, 2009, Mr. Pallas, who was a member of the Ilanka Community Wellness Advisory Committee, spoke to Keren Kelley, Ilanka's health director, about his wife's illness. Kelley told Mr. Pallas that he should bring plaintiff to the clinic.

Later that day, Mr. Pallas brought plaintiff to Ilanka. She was required to remain outside the clinic while clinic personnel tested to see if she had the H1N1 flu virus. Once it was determined that she did not, she was transferred to CCMC's emergency room, where she was admitted and diagnosed with pneumonia. Plaintiff was then medavac'd to Alaska Regional Hospital in Anchorage, where she remained hospitalized for nine days.

On June 11, 2012, plaintiff commenced this action by filing a complaint against the United States, in which she asserts a single claim for negligence. Plaintiff contends that if she had received medical treatment sooner, she would not have needed to be hospitalized in Anchorage.

In February 2013, plaintiff filed suit against CCMC and the City of Cordova in state court. Plaintiff asserts a negligence claim, a violation of rights claim, and a fraud and misrepresentation claim against CCMC and the City of Cordova. Plaintiff alleges that

---

[31]Id. at 14:20-25.

[32]Id. at 15:18-20.

CCMC prohibited her from coming to its facility, even though she was sick, and that medical providers at CCMC expressly "directed that she not come in with her symptoms, even though her symptoms were severe[.]"[33] She alleges that "[a]s a result of the defendants' restrictions on seeing [her] and failure to provide treatment, such as medication, her condition required emergency care, air evacuation, and hospitalization for ten days in Anchorage."[34]

In the state court action, CCMC filed a third-party complaint against the Native Village of Eyak, d/b/a Ilanka Health Center; Hess; and Phillips. The state court action was removed to this court and eventually consolidated with plaintiff's action against the United States.[35]

CCMC and the City of Cordova now move for summary judgment on all three of plaintiff's claims.

<u>Discussion</u>

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The

---

[33]State Court Complaint at 2, ¶ 4, Exhibit 6, Docket No. 18.

[34]<u>Id.</u> at ¶ 5.

[35]Order Granting Motion to Consolidate Cases, Docket No. 7, Case No. 3:13-cv-00185. The United States was also substituted as the third-party defendant in place of the Native Village of Eyak, Hess, and Phillips. Order Granting Substitution of Third-Party Defendant and Amending Caption, Docket No. 6, Case No. 3:13-cv-00185.

initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

CCMC and the City of Cordova first argue that they are entitled to summary judgment on all of plaintiff's claims because no one at CCMC spoke with plaintiff's daughter or husband about plaintiff's illness prior to October 14, 2009, the date on which plaintiff was admitted to CCMC. Plaintiff, however, argues that there are questions of fact as to whether her husband called CCMC on Sunday, October 11, 2009, and that there are questions of fact as to when the calls on Monday and Tuesday were made. If the calls were made in the evening, then plaintiff argues that it is possible that Hess and Phillips were acting as employees of CCMC during those calls, and not employees of Ilanka.

It is undisputed that CCMC and Ilanka are separate entities.  It is also undisputed that Hess and Phillips worked for Ilanka and that they sometimes worked for CCMC on weekends and weeknights.  But, there is no dispute that Phillips was not working for CCMC during October 2009 because her time sheets for the fall of 2009 reflect that she only worked at CCMC in September and November.[36]  She did not work at CCMC in October 2009.  Thus, there can be no dispute that in any conversations that Philips might have had with Nothstine or Mr. Pallas, Phillips was acting in her capacity as an Ilanka employee and not as a CCMC employee.

As for Hess, in her verified responses to CCMC's Requests for Admissions, plaintiff admitted that Hess did not work for CCMC during October 2009.[37]  "A matter admitted under [Rule 36] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."  Fed. R. Civ. P. 36(b).  Plaintiff has not moved to withdraw or amend her admission.  Thus, there can be no dispute that in any conversations that Hess might have had with Nothstine or Mr. Pallas, Hess was acting in his capacity as an Ilanka employee and not as a CCMC employee.

---

[36]Exhibit J, Memorandum in Support of Cordova Community Medical Center and the City of Cordova's Motion for Summary Judgment, Docket No. 24.

[37]Plaintiff's Responses to Cordova Community Medical Center's Requests for Admissions Nos. 5 & 6, Exhibit F at 4, Memorandum in Support of Cordova Community Medical Center and the City of Cordova's Motion for Summary Judgment, Docket No. 24. Plaintiff also admitted that Phillips did not work for CCMC in October 2009, which is consistent with Phillips' time sheets. Id. at 5.

The only basis then for plaintiff's claim that her family was told by someone at CCMC not to come in for medical care is the possibility that Mr. Pallas called CCMC on Sunday when Ilanka was closed.[38] The only evidence supporting the contention that Mr. Pallas called CCMC on Sunday is Nothstine's testimony saying that her father told her he called on Sunday and that she assumed such a call was to CCMC because Ilanka is closed on the weekends. This testimony is hearsay, but the fact that testimony is hearsay is not in itself sufficient to defeat a motion for summary judgment, if the evidence can be presented in an admissible form at trial. Fraser v. Goodale, 342 F.3d 1032, 1037 (9th Cir. 2003). But here, plaintiff has not offered anything that would suggest that she can present admissible evidence of a phone call to CCMC on Sunday. Mr. Pallas is deceased and is therefore not available as a witness and the only people plaintiff contends that Mr. Pallas and Nothstine spoke to were Ilanka employees (Hess, Phillips, and perhaps some other on-duty nurse). Without admissible evidence that Mr. Pallas called CCMC on Sunday, no reasonable fact finder could conclude that Mr. Pallas talked to anyone at CCMC on Sunday.

But even if Hess and Phillips were acting in their capacities as Ilanka employees and even if she has no admissible evidence of a phone call to CCMC on Sunday, plaintiff argues that CCMC and the City of Cordova are still not entitled to summary judgment.

---

[38]Plaintiff's contention that her daughter talked to Phillips on Sunday, October 11, has to be wrong because Phillips only worked for Ilanka during October 2009 and Ilanka was only open on weekdays. Nothstine could not have spoken to Phillips on Sunday.

Plaintiff argues that the protocols that were put in place to deal with the H1N1 situation, protocols which CCMC followed in the fall of 2009, discouraged people from seeking medical treatment and breached the standard of care. Plaintiff argues that the sign that was posted outside of the CCMC ER prevented people with flu-like symptoms from entering CCMC. Plaintiff contends that it is disputed whether the sign CCMC posted had the hotline number on it or whether it simply said "Stop. Do not enter." Plaintiff testified that she saw the sign posted outside CCMC in September 2009 and that it said "Stop. Do not enter", but that she did not recall what else, if anything, it said.[39] But she also testified that the "STOP" sign did not contain the hotline number.[40] Nothstine testified that she only recalled the sign saying "Stop. Do not enter if you have flu-like symptoms" but that it was possible that the sign contained additional information.[41] Phillips testified that she recalled the "STOP" sign at CCMC, which she thought said "stop, do not enter .. but I don't know if there was a 'Call this number' or what. I was told that there was a 'Call this number', but

---

[39]Pallas Deposition at 74:3-10, Exhibit A, Memorandum in Support of Cordova Community Medical Center and City of Cordova's Motion for Summary Judgment, Docket No. 24.

[40]Id. at 75:16-19.

[41]Nothstine Deposition at 51:1-14, Exhibit Q, Reply to Opposition to Cordova Community Medical Center and the City of Cordova's Motion for Summary Judgment, Docket No. 35.

I never called the number to see what it said."[42] Phillips further testified that she thought

it was "probable that [the sign at CCMC] had th[e hotline] number on it."[43] Based on this

testimony, plaintiff insists that there must have been another sign, one without the hotline

number on it, that was posted at CCMC and that the sign in evidence is not the only sign

that was ever posted at CCMC in the fall of 2009.

Discovery has been completed in this case,[44] and the only evidence that plaintiff has

produced of another sign is the equivocal testimony (quoted above) that the sign might not

have contained the hotline number. This equivocal testimony is not sufficient to create a

genuine issue of material fact when the sign itself is in evidence. The best evidence of what

the sign said is the sign itself. See United States v. Bennett, 363 F.3d 947, 953 (9th Cir. 2004)

(quoting Fed. R. Evid. 1002) ("The best evidence rule provides that the original of a

'writing, recording, or photograph' is required to prove the contents thereof"). The sign

itself advised people not to enter CCMC but to call the hotline number. There is no dispute

that neither plaintiff nor any of her family members called the hotline number. Had they

called, they would have been advised to seek immediate medical care for plaintiff based

on her symptoms. Because the "STOP" sign that CCMC had posted did not simply advise

---

[42]Phillips Deposition at 22:11-22, attached to Opposition to Cordova Community Medical Center and the City of Cordova's Motion for Summary Judgment, Docket No. 30.

[43]Id. at 23:7-8.

[44]Docket No. 20.

people not to enter CCMC but also to call the hotline number, no reasonable fact finder could conclude that the sign kept plaintiff from receiving medical care.

Because no reasonable fact finder could conclude that Mr. Pallas or Nothstine called CCMC on Sunday, October 11, 2009 or that the "STOP" sign posted at CCMC kept plaintiff from receiving medical care, there is no basis for liability as to CCMC and the City of Cordova. Because there is no basis for liability, CCMC and the City of Cordova are entitled to summary judgment on plaintiff's claims.[45]

Conclusion

CCMC and the City of Cordova's motion for summary judgment is granted. The clerk of court shall enter judgment dismissing plaintiff's complaint against CCMC, owned and operated by the City of Cordova, with prejudice. CCMC's third-party complaint is moot and is therefore also dismissed.

DATED at Anchorage, Alaska, this 16th day of October, 2014.

/s/ H. Russel Holland
United States District Judge

---

[45]Because the court has found that there is no basis for liability as to CCMC and the City of Cordova, the court need not reach their alternative argument that plaintiff's fraud and misrepresentation claim fails as a matter of law.